OPINION OF THE COURT
Richard B. Lowe, III, J.
In this action, plaintiffs Isaac Mizrahi and IM Holdings, Inc. dispute, inter alia, the proper distribution of the assets of a dissolved limited partnership. Defendants Chanel, Inc. and American Fragrances, Inc. now move to dismiss the complaint pursuant to CPLR 3211 (a) (1), (7) and (10).
*3 Background
Isaac Mizrahi & Co. L.P., a Delaware limited partnership (the partnership), was formed pursuant to a partnership agreement (agreement) by and among defendant American Fragrances, Inc. (AFI), which was both a general and limited partner, and plaintiff IM Holdings, Inc., nonparties Isaac Mizrahi Ltd. (IML), and Cheney Holdings, Inc., who were all limited partners. Plaintiff Isaac Mizrahi is the sole shareholder of IM Holdings, Inc., and the majority shareholder of IML. Defendant Chanel, Inc. (Chanel) is the parent company of AFI.
Following voluntary dissolution of the partnership in December 2000, plaintiffs objected to defendants’ plans to convey the intellectual property[1] of the partnership to Chanel, allegedly in satisfaction of more than $70 million in loans from Chanel. According to plaintiffs, Mizrahi is entitled to the intellectual property upon dissolution of the partnership.
Plaintiffs also dispute the existence of the Chanel debt and claim that it had no justifiable business purpose. They believe that defendants operated the partnership as a tax shelter for themselves, opting only for capital infusions that would produce net operating losses for Chanel, and nonrecourse debt for AFI and Chanel’s chief executive officer. Plaintiffs further allege that defendants negligently managed licenses of the partnership’s intellectual property, and that they deposited royalty checks from the licensees to the partnership into Chanel bank accounts.
Defendants refused plaintiffs’ formal demands for an accounting, but provided them with audited and unaudited financial statements of the partnership, copies of a promissory note for $26 million, a confirmation of AFI’s preferred capital contribution of $5 million, and other documents (see, Posen affidavit, exhibits F, G).
The complaint sets forth six causes of action: a request for a judgment declaring that the agreement requires the distribu *4 tion of the trademarks and intellectual property to Mizrahi (count I); breach of the agreement (count II); breach of fiduciary duty (count III); breach of the covenant of good faith and fair dealing (count IV); an accounting (count V); and preliminary and permanent injunctive relief (count VI).
Discussion
Initially, the court must address the law applicable to the agreement. Section 10.05 of the agreement states, in pertinent part: “This Agreement and all actions contemplated hereby shall be governed by and construed and enforced in accordance with the laws of the State of New York, including the principles of conflict of laws thereof.” (Posen affidavit, exhibit B [emphasis added].) While New York and Delaware have both enacted the Revised Uniform Limited Partnership Act, Delaware’s version (Del Code Ann, tit 6, § 17-101 et seq. [DRULPA]) has additional provisions governing fiduciary duty, and other subtle differences.[2] Because of possible conflict, the court should look to the applicable conflict of law rule, incorporated into the agreement’s choice of law clause. Subject to the Constitution of New York, the laws of the jurisdiction under which a foreign limited partnership is organized govern its organization and internal affairs and the liability of its limited partners (Partnership Law § 121-901). As a Delaware limited partnership, Delaware law therefore applies.[3]
Count I: Declaratory Judgment
Plaintiffs seek a declaration that the agreement requires distribution of the intellectual property to Mizrahi, based upon the language of section 8.02 of the agreement, which states, in pertinent part:
“If the Partnership is terminated, the assets of the Partnership or the proceeds of a sale thereof shall be applied in accordance with law and in the following order:
“first, to discharge all debts and liabilities of the Partnership (including, without limitation, any loans from Chanel, Inc. under the Chanel Credit *5 Facility or otherwise made by Chanel, Inc. or any loans guaranteed by Chanel, Inc.) and the expenses of liquidation and to establish satisfactory reserves to meet all reasonably anticipated liabilities;
“second, to Chanel [AFI], as Limited Partner, in an amount equal to its Preferred Capital; and “third, to convey and transfer to Mr. Mizrahi (as IML’s designee) all right, title and interest in and to the Intellectual Property contributed to the Predecessor Company by IML and the IML shareholders on the commencement date of the Predecessor Company; provided, however, that such transfer will be subject to the payment to Chanel [AFI] and other Partners (other than IML and IM Holdings, Inc.) of an amount equal to the lesser of (A) those Partners’ Partnership Percentages of the fair market value of such Intellectual Property * * * and (B) the difference between the fair market value of the Intellectual Property; and provided further that such transfer shall be subject to the payment to each IML shareholder (other than Mr. Mizrahi) of amounts equal to their respective pro rata shares * * * of (x) the fair market value of the Intellectual Property less (y) the amount paid to the other Partners pursuant to the immediately preceding proviso” (Posen affidavit, exhibit B [emphasis in original]).
Plaintiffs argue that the paragraph regarding intellectual property should be read as a specific provision that takes precedence over the general priority of distribution, because it specifies how particular assets of the partnership should be distributed. However, plaintiffs concede that the assets of the limited partnership must be distributed in an order (opp mem at 22), and the only words indicative of order are “first,” “second,” and “third.” To read the paragraph governing intellectual property as a specific provision would render the word “third” meaningless.
Next, plaintiffs claim that only Mizrahi may receive the intellectual property, for the provision does not name any other person to whom intellectual property may be conveyed. However, “[u]pon winding up of a limited partnership, the assets shall be distributed as follows: (1) To creditors, including partners who are creditors, to the extent otherwise permitted by law, in satisfaction of liabilities of the limited partnership.” (DRULPA § 17-804 [a] [1].) By the terms of the stat *6 ute, the priority of those who follow creditors can be modified by the partnership agreement, while no such provision exists for the creditors (compare DRULPA § 17-804 [a] [2], [3], with § 17-804 [a] [1]). Therefore, the priority of creditors, unlike the priorities of those who follow them, is not a modifiable default provision. According priority to Mizrahi over creditors of the partnership would thus contravene the statutory distribution scheme. As an undisputed asset of the partnership, the intellectual property may therefore be distributed to creditors in satisfaction of outstanding liabilities, regardless of whether they are named in the agreement’s distribution scheme.
Plaintiffs then claim that the partners intended to “bifurcate the value of the Intellectual Property from the ownership interest,” in that the partners receive only the value of the intellectual property, while Mizrahi receives the ownership interest. This mischaracterizes the provision. Because ownership of the intellectual property is exchanged for value, the provision, in essence, contemplates a sale of the intellectual property from the partners to Mizrahi. A contemplated sale cannot be read as “bifurcating” the intellectual property.
Finally, plaintiffs argue that dismissal is unwarranted because defendants have failed to show evidence that liabilities do exist, and so the intellectual property may yet be distributed to him under the agreement. To that extent, the cause of action for declaratory relief does not state a justiciable controversy.
Counts II and IV: Breach of the Limited Partnership Agreement and the Covenant of Good Faith and Fair Dealing
The second and fourth causes of action must be dismissed as premature. An action at law may not be maintained by one partner against another for any claim arising out of the partnership until there has been a full accounting, except where the alleged wrong concerns a partnership transaction which may be determined without an examination of partnership accounts (1056 Sherman Ave. Assoc. v Guyco Constr. Corp., 261 AD2d 519 [2d Dept 1999]; accord, Boone v Howard, 1989 WL 124898, *6, 1989 Del Super LEXIS 406, *16 [Del Super Ct 1989] [Superior Court has no jurisdiction over litigation of matters arising out of partnership affairs until there has been an accounting or settlement of the partnership affairs]).
Count III: Breach of Fiduciary Duty
This cause of action is dismissed as premature, like counts II and IV, and as improperly brought as a direct claim. The alie *7 gation that AFI accepted loans from Chanel without a justifiable business purpose amounts to an allegation that AFI mismanaged the partnership. “Damages [to a limited partner’s minority interest] for the general partners’ breach of fiduciary duties or for gross mismanagement would fall on the Partnership and all its partners” (Cincinnati Bell Cellular Sys. Co. v Ameritech Mobile Phone Serv. of Cincinatti, 1996 WL 506906, *19, 1996 Del Ch LEXIS 116, *57 [Del Ch 1996]). Thus, IM Holdings, Inc. should have asserted this cause of action as a derivative claim.
Count V: Accounting
Defendants maintain that an accounting is not warranted where plaintiff had access to financial information of the partnership, citing Raymond v Brimberg (99 AD2d 988 [1st Dept 1984]). They also argue that the accounting will not result in a distribution different than that provided for under the agreement. Citing Kennedy v Yost (32 Del Ch 386, 88 A2d 297 [1952]), defendants argue that an accounting should be dismissed where it would serve no practical purpose.
The DRULPA contains no provisions governing the accounting of a limited partnership in the event of dissolution. However, pursuant to DRULPA § 17-1105, Delaware courts have looked to the provisions of Delaware Uniform Partnership Law (see, RJ Assoc. v Health Payors’ Org. Ltd. Partnership, HPA, 1999 WL 550350, *10, 1999 Del Ch LEXIS 161, *35 [Del Ch 1999]). In RJ Assoc., the court held that, as to the fiduciary duties which are owed by and to the limited partners, “[e]very partner must account to the partnership for any benefit, and hold as trustee for it any profits, derived by him without the consent of the other partners from any transaction connected with the * * * conduct * * * of the partnership or from any use by him of its property.” (Id.) Here, section 15-807 (b) of title 6 of the Delaware Code Annotated provides that “[e]ach partner is entitled to a settlement of all partnership accounts upon winding up the partnership business or affairs.” Because the agreement here is silent as to accounting during the winding up process, Delaware law requires, by default, an accounting. Therefore, it is irrelevant to argue that an accounting is either too expensive or unnecessary.
Moreover, the cases cited by defendants are inapposite. Raymond v Brimberg (supra) is limited to where the plaintiff was “unable to give an articulable objection to the accounting that had been voluntarily rendered and it could allege only ‘dissat *8 isfaction’ with the materials it obtained” (CGG Assoc. I v Riverside Assoc., 157 AD2d 435, 441-442 [1st Dept 1990]). Here, unlike Raymond v Brimberg, plaintiffs offer several specific reasons why the accounting is deficient. In Kennedy v Yost, the accounting was dismissed because the only remaining asset of the partnership was goodwill, which the court found was of little or no substantial value (Kennedy v Yost, supra, 32 Del Ch at 392-393, 88 A2d at 300). Here, unlike Kennedy v Yost, it is unclear that the liabilities of the partnership exceed the value of the intellectual property, such that Mizrahi is not entitled to the intellectual property, subject to the payments to various partners and the IML shareholders. Defendants acknowledge that the valuation provided in the financial statements provided to plaintiff state only the book value of the intellectual property, which is not necessarily its fair market value. Curiously, while the Chanel debt is allegedly around $70 million, none of the parties even state here the book value of the intellectual property.
Defendants then argue that the accounting should be dismissed for failure to join as necessary parties Haim Dabah and Jack Dushey, who were signatories to the agreement, and Cheney Holdings, Inc. and IML, which were limited partners. In order to warrant dismissal for failure to join a necessary party, defendants have to demonstrate that joinder is necessary to accord full relief to the parties presently joined, or that the alleged necessary party would be inequitably affected by any judgment that might result in this action (see, Amsellem v Host Marriott Corp., 280 AD2d 357, 359-360 [1st Dept 2001]).
Here, Dabah and Dushey are not necessary parties. As IML shareholders,[4] they are entitled to a payment from Mizrahi if he acquires the intellectual property (see, agreement § 8.02, para third). Because the parties do not dispute the validity of that provision, joinder is unnecessary to accord full relief. Neither Dabah nor Dushey would be inequitably affected by a judgment, because a judgment in favor of either plaintiffs or defendants will not result in any liability on their part, nor reduce the amount of payment to which they may be entitled.
As to IML and Cheney Holdings, Inc., all partners, including limited partners, are necessary parties to the action for an accounting (Goodwin v MAC Resources, 149 AD2d 666, 667 [2d Dept 1989], citing Marks v Zucker, 118 AD2d 452 [1st Dept *9 1986]). However, dismissal is not warranted, for jurisdiction is obtainable over IML and Cheney Holdings, Inc., which are New York business entities. Pursuant to CPLR 1001 (b), the court shall instead order IML and Cheney Holdings, Inc. summoned to the action for accounting.
Therefore, defendants’ motion is denied as to this cause of action.
Count VI: Preliminary and Permanent Injunctive Relief
This cause of action is dismissed due to plaintiffs’ lack of opposition to this part of defendants’ motion.
Conclusion
Accordingly, it is hereby ordered that defendants’ motion to dismiss the complaint is granted as to all causes of action except the fifth cause of action, and the second, third, and fourth causes of action, along with so much of the first cause of action that failed to state a justiciable controversy, are dismissed without prejudice, and the sixth cause of action is dismissed with prejudice; and it is further ordered that plaintiffs are directed to join Cheney Holdings, Inc. and IML as parties to the action for accounting within 30 days after service of a copy of this order with notice of entry; and it is further adjudged and declared that Mizrahi’s claim to the intellectual property of Isaac Mizrahi & Co., Ltd. is subordinate to the claims of the creditors of Isaac Mizrahi & Co., Ltd., the expenses of liquidation, and satisfactory reserves to meet all reasonably anticipated liabilities, and to the claim of defendant American Fragrances, Inc. for an amount equal to its preferred capital.

. “Intellectual Property means “(i) the Names [Isaac Mizrahi, and any other trade names associated with IML, Mr. Mizrahi or his designs] and (ii), all other trademarks, service marks, logotypes, symbols, and other trade names, both United States and foreign, whether registered or unregistered, and all designs, slogans, copyrights (except as provided in Section 3.03), models, and other forms of intellectual property, which have been, are now, or will during the term of this Agreement become associated with IML, Mr. Mizrahi or his designs and are now or may during the term of this Agreement be used or useful with respect to the Partnership Business, including, without limitation, any applications for the registration of any of the foregoing, and all goodwill associated therewith” (agreement § 1.20).

. For a general comparison, see Field & Moskin, Transactional Lawyer’s Deskbook: Advising Business Entities § 15.2 (b) (2), at 9-11.

. It seems rather odd that the parties intended this result. Had the parties intended Delaware law to apply, the choice of law provision need not have ascribed such a circuitous route. Nevertheless, the court is constrained to apply the unambiguous terms of the choice of law provision.

. Haim Dabah is considered an IML shareholder for purposes of the agreement (agreement § 1.17).